**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CLARISSA BONGIORNO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15 C 5887 |
| ) | |
| THE FRESH MARKET INC., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON MOTION TO DISMISS

In her second amended complaint against her former employer The Fresh Market, Inc. (FM), Clarissa Bongiorno, a woman who started working for FM as a meat cutter in 2011 at age 50, asserts claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Among other things, Bongiorno alleges that she was subjected to a hostile work environment from November 2011 through June 2014, when FM terminated her employment. FM has moved to dismiss Bongiorno's gender discrimination and hostile work environment claims for failure to exhaust administrative remedies.

## Background

Bongiorno alleges that she filed an administrative charge with the Illinois Department of Human Rights (IDHR) on October 22, 2013. 2d Am. Compl., ¶ 32 & Ex. 2. The charge asserts that Bongiorno was subjected to unequal terms and conditions of her employment based on her gender and age, including denial of training to become meat department manager, promotion of a less-experienced male worker over her, imposition of more onerous work requirements, and issuance of a written reprimand. *Id.*, Ex. 2.

In her complaint, Bongiorno alleges that October 2013 until February 2014, three FM supervisory and human resources personnel, pressured her to withdraw her complaint, telling her that she was "causing problems" and promising to investigate the complaint and "make changes" if she withdrew it. *Id.* ¶¶ 33, 34. As a result, on

February 14, 2014, Bongiorno submitted a "voluntary request form" to the IDHR asking to withdraw her charge. *Id.* ¶ 34 & Ex. 3.

In fact, Bongiorno says, the supervisors who pressured her to withdraw her charge and promised to make changes actually were planning to terminate her. *Id.* ¶ 35. She alleges that they gave her a written "final warning" in December 2013 for working without cut-resistant gloves, even though male employees commonly did this without being disciplined. *Id.* ¶¶ 36-37. She was given another warning in January 2014 for being absent from work on several dates, even though, she says, the absences were authorized. *Id.* ¶ 38. All of this was before Bongiorno withdrew her IDHR charge.

After Bongiorno withdrew her IDHR charge, she got no more warnings or discipline and, she says, did not violate any company rules. *Id.* ¶ 39. She was off work from June 4-8, 2014 for medical reasons, *id.* ¶ 40. She worked as scheduled on June 9 but was terminated at the end of that work day. *Id.* ¶ 41. Bongiorno says that she was issued written termination notices stating that she had violated FM's no-harassment policy by discussing the sexual orientation of other employees and telling a vulgar joke. *Id.* ¶ 43. Bongiorno says these allegations were false and that there were irregularities in her termination. *Id.* ¶¶ 44-45. She contends it was a pretext for discrimination and retaliation.

On June 17, 2014, Bongiorno went to the IDHR and completed a "complaint information sheet." *Id.*, Ex. 6. In a section entitled "Description of the employment harm and bases you are requesting IDHR to investigate," she said that false charges had been made against her, and her handwritten description of this completely filled the space provided on the form for describing the complainant's allegations. *Id.* at 2. Another question on the form asked for certain information "[i]f you claimed SEXUAL HARASSMENT as a basis." Bongiorno completed this section of the form, identifying two employees as "the harasser[s]," and checking "yes" in response to the question, "Do you want the sexual harasser charged separately as an additional respondent?" *Id.* at 3.

The form that Bongiorno completed also made reference to a claim of disability discrimination (based on arthritis and a "mental breakdown") under a section asking for

2

certain information "[i]f you claimed PHYSICAL OR MENTAL DISABILITY as a basis." *Id.* Finally, in a section asking for information "[i]f you claimed RETALIATION as a basis," Bongiorno asserted that she was retaliated against "for charges previously filed" and for "defend[ing] a friend in a previous hearing. *Id.*

Bongiorno signed the form under a statement that provided her consent for the IDHR to file her charge with the EEOC, for the EEOC to investigate the charge, for the IDHR to reveal her identity in investigating the charge, and to disclose her identity and personal information "[i]f IDHR takes [sic] a charge based on the information provided." *Id.* Just above her signature was a notation stating, "My signature below verifies the accuracy of the information provided herein . . . ." *Id.*

Bongiorno attached to her second amended complaint a partial copy of the charge prepared by the IDHR, which she likewise signed, *id.*, Ex. 7, and her response to the motion to dismiss includes a complete copy. Pl.'s Mem. in Resp. to Defs.' Mot. to Dismiss, Ex. A. The charge includes claims of disability discrimination relating to Bongiorno's arthritis and her mental breakdown, and a claim of retaliation based on her earlier IDHR charge. The charge prepared by the agency included no reference to gender discrimination or sexual harassment, even though Bongiorno's allegations on those points were clearly made in her complaint information sheet.

## Discussion

As indicated earlier, Bongiorno's second amended complaint includes claims of gender discrimination under federal and state law and retaliation. She asserts no claims based on age or disability discrimination. In her gender discrimination claims, Bongiorno alleges that she was subjected to a hostile and abusive work environment; was not promoted; and was terminated, all due to her gender. *Id.* ¶¶ 63-68. The retaliation complaint involves her termination.

FM has moved to dismiss Bongiorno's federal and state claims of gender discrimination for failure to exhaust administrative remedies. FM contends that Bongiorno failed to exhaust administrative remedies through her first IDHR charge, because she withdrew that charge. FM also argues that even if the first charge is considered, it does not include claims of failure to promote, wrongful termination, or a

hostile work environment. Finally, FM argues that Bongiorno's second IDHR charge includes no allegations of gender discrimination or hostile work environment.

FM says in its motion that it seeks dismissal under Federal Rule of Civil Procedure 12(b)(1), which authorizes a defendant to move to dismiss for lack of subject matter jurisdiction. See Def.'s Mot. to Dismiss Cts. 1-2 (dkt. no. 17) at 1. But the exhaustion-of-remedies requirement under Title VII is not jurisdictional, as the Supreme Court held over thirty years ago. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1983); *see also Gibson v. West*, 201 F.2d 990, 993 (7th Cir. 2000). Rather, it is an affirmative defense, *see Bibbs v. Cook Cty.*, 618 F. App'x 847, 849 (7th Cir. 2015), and as such it is subject to waiver and estoppel. *Zipes*, 455 U.S. at 393; *Gibson*, 201 F.3d at 993. FM, despite its exclusive reliance on Rule 12(b)(1) in its motion, appears to recognize this; it also cites Rule 12(b)(6) in its supporting memorandum. See Def.'s Mem. at 3-4. But an affirmative defense typically is not an appropriate basis for dismissal under Rule 12(b)(6); dismissal under that rule is appropriate only "if it [is] clear from the face of the complaint that the affirmative defense applie[s]." *Id.* In this case, the "face of the complaint" includes the exhibits Bongiorno has attached to it, as well as the second page of the incomplete exhibit. *See, e.g., Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

FM might ultimately have a winning failure to exhaust defense. At the current stage of the case, however, its motion founders on the rule that it must be "clear from the face of the complaint" that she failed to exhaust one or more of her claims in order for dismissal under Rule 12(b)(6) to be appropriate.

First, based on the first IDHR charge, Bongiorno has a plausible contention that FM should be estopped from asserting failure to exhaust, at least with regard to the claim of failure to promote, which the first charge expressly asserts. FM may be estopped if it knew the facts; it intended Bongiorno to rely on its conduct or acted in a way that entitled Bongiorno to believe reliance was intended; Bongiorno was ignorant of the facts; and Bongiorno reasonably relied on FM's conduct to her detriment. *See Edgewater Hosp., Inc. v. Bowen*, 856 F.2d 1123, 1138 (7th Cir. 1988), *cited in Gibson*, 201 F.3d at 994. In this case, "the facts" would be the contention that FM falsely represented that it would make changes if Bongiorno withdrew her IDHR charge,

4

intending to do no such thing but to instead trump up a basis to fire her. Bongiorno alleges that she relied on this in withdrawing the charge.

FM argues that any detriment to Bongiorno did not result from reasonable reliance, because she did not reinstate her charge. But she arguably at least attempted to do so by including her earlier allegations in her second IDHR charge. And in any event, the issue of reasonable reliance cannot be adjudicated *against Bongiorno* on a motion to dismiss for failure to state a claim under Rule 12(b)(6). Bongiorno was not required to "plead around" the expected affirmative defense of failure to exhaust, so the absence of more detailed allegations cannot be held against her. "[P]laintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain any information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Second, the Court does not have access to the intake form that Bongiorno completed in advance of the IDHR's preparation of the first charge. As discussed below, there are circumstances in which an intake form can serve as a charge for purposes of exhaustion. If the first intake form make reference to a hostile work environment, it might be sufficient for purposes of administrative exhaustion.

Third, Bongiorno has a plausible contention that she exhausted her hostile work environment claim via her second IDHR charge. The charge itself, a document prepared by the IDHR, did not include such a claim. But Bongiorno plainly made reference to such a claim in her complaint information sheet. In certain circumstances, an intake questionnaire—which is what the complaint information sheet is—can serve as a charge for purposes of the exhaustion requirement. *See generally Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008).[1] "A piece of paper that alleges discrimination and asks the agency to take remedial action suffices." *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597–98 (7th Cir. 2009). The intake questionnaire that Bongiorno signed did that, at least with regard to the hostile work environment claim. Bongiorno checked "yes" on a line asking "Do you want the sexual harasser charged

---

[1] *Federal Express v. Holowecki* concerned the Age Discrimination in Employment Act, but the EEOC's regulations regarding charges under Title VII essentially duplicate its regulations under the ADEA, which the Supreme Court cited in support of its decision. *See* 29 C.F.R. § 1601.12.

5

separately as an additional respondent?" 2d Am. Compl., Ex. 6 at 3. This makes it reasonably clear (even if it was not otherwise clear from the form) that Bongiorno was asking the agency to take remedial action—with the individuals she identified to be named as *additional* respondents, presumably in addition to FM itself. *Cf. Holowecki*, 552 U.S. at 406 ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.").

The bottom line is that the face of the complaint does not make it clear that Bongiorno failed to exhaust her discrimination or hostile work environment claims. This is largely a function of the fact that she was not required to plead around those potential defenses in her complaint and is not required to put forward all of her evidence at this stage of the case. The appropriate means for FM to raise this defense is by way of a motion for summary judgment.

**Conclusion**

For the reasons stated above, the Court denies defendants' motion to dismiss [dkt. no. 17]. Defendants are directed to answer the complaint by no later than January 19, 2016. Rule 26(a)(1) disclosures are to be made by no later than January 26, 2016 if they have not already been made. The case is set for a status hearing on February 2, 2016 at 9:00 a.m., in chambers (Room 2188). Before that date, counsel are to discuss and attempt to agree on a discovery schedule. They are also to exchange settlement proposals as set forth in the undersigned judge's initial standing order, which may be found at http://www.ilnd.uscourts.gov/home/JUDGES/KENNELLY/INIT-ORD.htm.

Date: January 3, 2016                                  _____
                                                        MATTHEW F. KENNELLY
                                                        United States District Judge